# EXHIBIT "A"

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>RAY F. GARMAN, III,<br><br>Debtor, | **Chapter 7**<br><br>Case No.: 05-37483 (BIF) |
| GARY F. SEITZ, as Chapter 7 Trustee of the Debtor's Estate and MIA MAYER GARMAN,<br><br>Plaintiffs,<br>v.<br><br>RAY F. GARMAN, III and WAVERLY DEANS,<br><br>Defendants. | Adversary No.: 06-608 (BIF) |

**SETTLEMENT AGREEMENT**

**THIS SETTLEMENT AGREEMENT** (the "Settlement Agreement") is made and entered into as of this __ day of March, 2007, by and between GARY F. SEITZ, CHAPTER 7 TRUSTEE FOR THE ESTATE OF RAY F. GARMAN, III (the "Trustee"), MIA MAYER GARMAN ("Mayer") and WAVERLY DEANS ("Deans") who intending to be legally bound, and subject only to the conditions herein, and Bankruptcy Court approval, hereby agree as follows:

1. In 1991, Mayer and Ray F. Garman (the "Debtor") were married.

2. In or about June 2004, the Court of Common Pleas of Philadelphia County, Pennsylvania entered an Order of Divorce dissolving the marriage of Mayer and the Debtor (the "Divorce Order").

3.    The Divorce Order awarded to Mayer, among other things (1) all business interests of the Debtor, (2) a certain amount designated as equitable distribution and (3) a certain amount designated as alimony.

4.    At the time the Divorce Order was entered, Mayer asserts that the Debtor had knowledge of the existence of PMA Capital Management Limited ("PMA"), but did not disclose any such information to the Court of Common Pleas.

5.    Mayer asserts that despite the fact that the Debtor did not disclose the existence of PMA to the Court of Common Pleas, she was awarded all of the Debtor's interest in this asset pursuant to paragraph 5 of the June 2004 Order.

6.    In approximately 2000, Deans and Debtor commenced a relationship.

7.    Deans asserts that, as between herself and the Debtor, she was and is the sole owner of PMA and, hence, entitled to any and all proceeds derived therefrom upon its sale.

8.    On or about April 2006, PMA was sold.  The portion of the sale proceeds that Deans received from the interest in PMA titled in her name was approximately $7,400,000.00 (the "Proceeds").

9.    Between the date of distribution of the proceeds from the sale of PMA and the date hereof, Deans has utilized certain of the Proceeds for her personal use.

10.    On October 14, 2005, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*  (the "Code").

11.    On October 25, 2005, the Office of the United States Trustee appointed Gary F. Seitz as the interim Chapter 7 Trustee for the case, which appointment

subsequently became permanent at the conclusion of the 341 meeting and remains in effect.

12. On August 16, 2006, Mayer filed a complaint against the Debtor and Deans in the Court of Common Pleas of Philadelphia County, Pennsylvania, seeking, among other things, the recovery of the Proceeds from the sale of any interest in PMA in the case captioned as Mia Mayer Garman v. Waverly Deans, et al., December Term, 1996, No. 8468 (the "Litigation").

13. On September 14, 2006, Deans and the Debtor, among others, filed a Notice of Removal, removing the Litigation to the United States District Court for the Eastern District of Pennsylvania with the case captioned as: Mia Mayer Garman v. Waverly Deans, et al., Civil Action No. 2:06-CV-04104.

14. On or about November 2, 2006, the District Court signed a Stipulation and Order which, among other things, joined the Trustee as a co-plaintiff in the Litigation and transferred the Litigation to the United States Bankruptcy Court for the Eastern District of Pennsylvania.

15. The Litigation is currently pending in the Bankruptcy Court under the caption Gary Seitz, Chapter 7 Trustee, et al. v. Waverly Deans et al., Adv. Pro. No. 06-00608. The Litigation centers on the competing claims of Deans, Mayer and the Trustee over the ownership of the Proceeds. The remaining Proceeds are presently being held in Jefferson Bank account number 44003408, pursuant to the Stipulated Preliminary Injunction entered and subsequently extended by Order dated February 28, 2007. At present, the remaining Proceeds are in the amount of $6,937,127.68 plus interest, continually accruing on the balance.

16.    The Trustee and Deans take the position that Mayer does not have a property right interest in the Proceeds but, instead, only a claim to the Proceeds as a creditor in the bankruptcy case.

17.    In order to settle and resolve the parties' disputes raised in the Litigation without the need for costly litigation, Deans, Mayer and the Trustee have agreed to the terms set forth herein.

**NOW THEREFORE, AND EACH OF THE UNDERSIGNED INTENDING TO BE MUTUALLY BOUND DO HEREBY STIPULATE AND AGREE AS FOLLOWS:**

a.    Immediately upon approval by the Bankruptcy Court of this Settlement Agreement, Deans shall cause all remaining Proceeds to be wired to the Trustee (the "Settlement Payment") to be distributed as set forth herein.

b.    Immediately upon the Order approving this Settlement Agreement becoming a final order, and upon the funds clearing the Trustee's account, the Trustee shall distribute $1,125,000.00 to Deans. Deans shall retain any of the remaining moneys in her personal accounts as set forth in her Declaration and as testified to in the proceedings before the Bankruptcy Court, or any property acquired by Deans from the earlier distributions from the PMA investment received prior to the Settlement, including but not limited to the Taos New Mexico Property titled in her name. Upon approval of the Settlement Agreement and the transfer of the Settlement Payment to the Trustee, the Stipulated Preliminary Injunction shall be dissolved, without further order of this court, and Deans shall be entitled to use the funds and property retained under this Settlement Agreement, without further order of this or any other court.

c. Immediately upon the Order approving this Settlement Agreement becoming a final order, and upon the funds clearing the Trustee's account, the Trustee shall distribute $3,875,000,00 to Mayer as an equitable distribution pursuant to paragraph 5 of the June 2004 Order.

d. The Trustee shall prepare and file all tax returns required to be filed with respect to the liquidation of the PMA asset and will utilize the Settlement Payment to pay any and all taxes due with respect to the liquidation of the PMA asset, estimated to be $969,000.00. The Trustee shall provide to Deans, Mayer and their counsel in advance of filing copies of the tax returns, acknowledging the recognition by the Debtor's estate of any and all income received as a result of the liquidation of the PMA asset. Deans and Mayer shall have no liability for any tax due by Debtor's estate.

e. Fox Rothschild LLP ("Fox"), counsel for the Debtor, shall be entitled to receive a fee equal to 30-40% of the Settlement Payment pursuant to the provisions of the Employment Order dated October 18, 2006. It is agreed, however, that Fox shall accept as a fee an amount not to exceed $500,000.00.

f. The Trustee shall be entitled to his statutory commission but has agreed that in no event will he receive more than $175,000.00 commission related to the recovery of the Settlement Payment.

g. The limits on the Trustee's counsel fees and on the Trustee's commissions as set forth herein shall apply only to the recovery of the Settlement Payment and not to any other recovery of assets in this bankruptcy case.

h. The Trustee shall reserve $30,000 to pay the fees of the Trustee's accountant employed in this case.

i.    All remaining funds shall be distributed by the Trustee in accordance with

the distribution scheme set forth in the Bankruptcy Code. For the purpose of

distributions to unsecured general creditors, Mayer shall be allowed a general unsecured

claim against the Debtor's estate in the amount of $7,500,000.00 on account of her

prepetition claim and Deans shall be entitled to a assert an unsecured prepetition claim of

$2,500,00.00.  The Trustee agrees not to object to the allowance of the proofs of claim of

Deans and Mayer. Both Deans and Mayer shall be entitled to participate pro rata in any

distribution to unsecured creditors of the Debtor's estate, to the extent of their allowed

general unsecured claims as set forth herein, after holders of other Allowed Unsecured

Claims receive a distribution of ten (10%) per cent. The amount of the allowed claims

set forth herein shall apply only to the distribution of the remaining portion of the

Settlement Payment and not to any other assets that may be recovered by the Trustee.

j.    Deans shall sign a Declaration in the form attached hereto attesting that,

other than as stated in the Declaration, she possesses no other real or personal property

acquired with the Proceeds or distributions from PMA.

k.    The release set forth herein shall not apply to any assets acquired by the

Proceeds subsequently discovered to be in the possession, custody or control of Deans

that are not disclosed on the Declaration. Mayer agrees that with respect to any claim

under this provision, she shall first give written notice to Deans of her intention to raise

any such claims, giving in specific detail the facts and circumstances underlying the

claim, and shall give Deans thirty (30) days to respond to any such information. Mayer

agrees that she may not rely solely upon any statement by the Debtor as a basis for

seeking relief under this paragraph.

l.      Immediately upon approval of this Settlement Agreement, and except as set forth herein, the Trustee, on behalf of the estate of Ray F. Garman, III, and all creditors asserting rights of and through the Debtor, Mayer, and Deans, shall remise, release, discharge and acquit each other, and each other's respective employees, members, individual attorneys, and their firms including but not limited to Fox Rothschild O'Brien and Frankel, LLP ("Fox") Obermayer Rebmann Maxwell & Hippel, LLP ("Obermayer"), Willig and Williamson, P.C. ("Willig") and Bovarnick & Associates, LLC, from any and all claims, actions, liabilities, debts and causes of action whatsoever, however incurred or arising, now existing or hereafter arising, known or unknown, including, without limitation, those relating to or pertaining to the Litigation, whether raised in the Litigation or not.

m.      Deans shall execute a blank stock power transferring her interest in Seitzross International and/or any other company allegedly conveyed by the Debtor to Deans, to be held in escrow by the Trustee. Unless otherwise agreed to by the Trustee and Mayer, the issue of the ownership of such companies and/or any assets held thereby shall be decided by the Bankruptcy Court and the Trustee and Mayer reserve their rights to assert any and all arguments regarding the ownership of such companies and/or assets held thereby. Nothing herein shall be construed to release any claim that the Trustee and/or Mayer and/or Deans may have against any of the Garman related companies or Ray Garman personally. Deans releases any and all interest in any bank accounts held jointly between she and the Debtor to the Trustee.

n.      Upon receipt of a fully executed copy of this Settlement Agreement, the Trustee shall promptly file a motion for approval of this Settlement Agreement with the

Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, upon expedited notice.

o. If the Bankruptcy Court denies the Motion to Approve this Settlement, this Settlement Agreement shall become null and void and the parties returned to their respective positions existing immediately prior to entering into this Settlement, without any factual admissions or admissions of liability whatsoever, as if this Settlement Agreement had never been entered into.

p. Upon distribution of the Settlement Payment, the Trustee and Mayer shall immediately dismiss with prejudice as to Deans, only, the Litigation, and any other litigation they may have instituted against Deans in any other court.

q. This Settlement Agreement contains the entire agreement between the parties and may only be amended in writing executed by both parties hereto and approved by the Bankruptcy Court.

r. This Settlement Agreement is being executed for settlement purposes only and does not constitute an admission of liability by any of the Parties hereto.

s. Deans warrants and represents that none of the Proceeds or property retained by Deans under and pursuant to this Settlement shall be used for the benefit of the Debtor. In the event Proceeds or property retained by Deans under and pursuant to the Settlement shall be used for the benefit of the Debtor, Deans agrees that Mayer may seek liquidated damages from Deans of $250,000.00, if and in the event this representation is breached, and that Deans shall submit to the jurisdiction of the Pennsylvania Courts for enforcement of this provision.

t. Deans and the Trustee agree that neither will assert a position contrary to the position of Mayer with respect to the issues relating to her claims of non-dischargeability of her debts.

u. This Settlement Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing the document to be drafted. Each party warrants that it has been represented and advised by counsel or has had full opportunity to be represented and advised by counsel with respect to this Settlement Agreement and all matters covered by it.

v. This Settlement Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the Commonwealth of Pennsylvania, without regard to the Commonwealth's rules regarding conflict of laws.

w. This Settlement Agreement may be executed in one or more counterparts, including by facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

**IN WITNESS WHEREOF,** the parties are executing this Settlement Agreement as of the day and year first above written.

**SO ACKNOWLEDGED AND AGREED ON THE DATE FIRST STATED BELOW:**

**MIA MAYER**

Deleted: Title

u. This Settlement Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing the document to be drafted. Each party warrants that it has been represented and advised by counsel or has had full opportunity to be represented and advised by counsel with respect to this Settlement Agreement and all matters covered by it.

Formatted: Bullets and Numbering

v. This Settlement Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the Commonwealth of Pennsylvania, without regard to the Commonwealth's rules regarding conflict of laws.

w. This Settlement Agreement may be executed in one or more counterparts, including by facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

**IN WITNESS WHEREOF,** the parties are executing this Settlement Agreement as of the day and year first above written.

**SO ACKNOWLEDGED AND AGREED ON THE DATE FIRST STATED BELOW:**

**MIA MAYER**

[signature] 3/9/07

Date:

Formatted: TOC2

#154211
PHL 850735v1 09/06/07
#154211

**Date:** ______________________________

**WAVERLY DEANS**

**Date:** ______________________________

**GARY F. SEITZ, CHAPTER 7 TRUSTEE OF THE ESTATE OF RAYMOND F. GARMAN III**

**Date:** 3/9/07 [signature]

Fox Rothschild LLP
Attorneys for Gary Seitz, Chapter 7 Trustee

**Date:** ______________________________

**WAVERLY DEANS**

[signature]

**Date:** March 9, 2007

**GARY F. SEITZ, CHAPTER 7 TRUSTEE OF THE ESTATE OF RAYMOND F. GARMAN III**

**Date:** ______________________________

**DECLARATION OF WAVERLY DEANS IN CONNECTION WITH SETTLEMENT AGREEMENT BY AND BETWEEN WAVERLY DEANS, THE CHAPTER 7 TRUSTEE AND MIA MAYER GARMAN**

I, Waverly Deans, hereby declare under oath that the following is true, and continues to be true, as of this date. I understand others are relying on this Declaration as part of the Settlement. I make this statement on my own behalf, and make no representation with respect to actions or conduct of the Debtor.

1. I testified in Bankruptcy Court about the whereabouts of the proceeds of the PMA asset (the "Proceeds"). At the time I testified, the Proceeds were, and continue to be located in Jefferson Bank in Dallas Texas. The Proceeds are on deposit in account number 0044003408. I attach hereto as Exhibit "A" a copy of the most recent statement for that account.

2. I have funds, which I testified to in Bankruptcy Court, in an account at Jefferson Bank in account number 0042002329. Those funds were not derived from the Proceeds. I attach hereto as Exhibit "B" the most recent statement for that account.

3. I have funds that I testified to in court in North Dallas Bank & Trust Co., account numbers 24-0564-5 and 12-4975-4. I attach hereto as Exhibit "C" a copy of the most recent statement for that account.

4. I have an account at Citibank account number 12774413/19971532. I attach hereto as Exhibit "D" a copy of the most recent copy of the statement for that account.

5. I do not have in my possession, custody and control, any other Proceeds other than as disclosed herein. No other Proceeds are being held by me in any other location. No other person is holding any Proceeds, or assets, real or personal, acquired with the Proceeds for my benefit, and I have no knowledge of the existence of any additional Proceeds.

6. I do not have in my possession, custody and control, nor have I acquired any real estate, investments or securities with the distributions from PMA. In addition, I have not purchased any item of personal property valued in excess of $10,000.00 from the distributions from PMA with the exception of the Taos Property.

7. The only funds which I have used at all from any of the referenced accounts since the entry of the Stipulated Preliminary Injunction are the moneys I was authorized to use on a monthly basis by the Bankruptcy Court orders entered in connection with my Motion to Modify the Stipulated Preliminary Injunction.

Dated:

Waverly Deans

# Exhibit "A"

Thursday, March 08, 2007

## *Jefferson Bank*

**Waverly Ruth Deans**
**4320 Gilbert Ave**
**Dallas, TX 75219**

**Checking Activity**

**Account Number** **44003408**
**PRESTIGE MM SAVINGS**

**Transactions From Statement Period Ending 02/28/2007**

## Account Summary

**Ending Statement Balance on Wednesday, February 28, 2007** **$6,937,127.68**

## Account Activity

| Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|
| 02/08/2007 | OUTGOING WIRE#1 | $2,000.00 | | $6,913,672.21 |
| 02/09/2007 | FORCE PAY DEBIT | $700.00 | | $6,912,972.21 |
| 02/16/2007 | OUTGOING WIRE#61 | $1,035.06 | | $6,911,937.15 |
| 02/28/2007 | INTEREST PAYMENT | | $25,190.53 | $6,937,127.68 |

## Balance By Day

1. 02/08/2007: $6,913,672.21
2. 02/09/2007: $6,912,972.21
3. 02/16/2007: $6,911,937.15
4. 02/28/2007: $6,937,127.68

# Exhibit "B"

Thursday, March 08, 2007

**Jefferson Bank**

**Waverly Ruth Deans**
**4320 Gilbert Ave**
**Dallas, TX 75219**

## Checking Activity

| Account Number | 42002329 |
|---|---|
| PRESTIGE CHECKING | |

Transactions From Statement Period Ending 02/25/2007

## Account Summary

| Ending Statement Balance on Sunday, February 25, 2007 | $125,057.52 |
|---|---|

## Account Activity

| Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|
| 02/25/2007 | INTEREST PAYMENT | | $212.07 | $125,057.52 |

## Balance By Day

1. 02/25/2007: $125,057.52

# Exhibit "C"

FROM : TX. AMERICAN PIPE & SUPPLY CO. PHONE NO. : 214 691 2737 Mar. 08 2007 06:39PM P2

P.O. Box 679001
Dallas, TX 75367-9001
972-387-1300

Questions about your statement?

Customer Service
972-716-7160
ReadyLine 24-Hour Banking
972-716-7333
ndbt.com

**NORTH DALLAS BANK & TRUST CO.**
*Thinking like a customer.*

Page 1
Member FDIC
2405645

Waverly R Deans
B C Robertson
4320 Gilbert Ave
Dallas TX 75219-2961

We do home mortgage financing.
For more information, visit us at www.ndbt.com or call 972-716-7379

**Relationship Checking** 24-0564-5

**SUMMARY OF ACCOUNT**

| | | | |
|---|---|---|---|
| Account Number | 24-0564-5 | Statement Dates 2/05/07 thru | 3/04/07 |
| Previous Balance | 327.09 | Days in the statement period | 28 |
| 2 Deposits/Credits | 3,095.06 | Average Ledger | 1,476.14 |
| 44 Checks/Debits | [illegible] | Average Collected | 1,476.14 |
| Service Charge | 10.00 | | |
| Interest Paid | .00 | | |
| Ending Balance | 585.74 | | |

**DEPOSITS AND OTHER ADDITIONS**

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 02/08 | Wire Transfer Credit | 2,000.00 |
| 02/16 | Wire Transfer Credit | 1,095.06 |

**WITHDRAWALS AND OTHER DEDUCTIONS**

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 02/08 | POS PUR. 02/06<br>DOMINO'S PIZZA #6971<br>DALLAS TX | 16.17- |
| 02/08 | POS PUR. 02/06<br>EXXONMOBIL91 04758702<br>DALLAS TX | 10.01- |
| 02/08 | POS PUR. 02/08<br>4438 LEMMON AVE<br>DALLAS TX M86A31 | 21.46- |

P.O. Box 679001
Dallas, TX 75367-9001
972-387-1300

Questions about your statement?

Customer Service
972-716-7160
ReadyLine 24-Hour Banking
972-716-7333
ndbt.com

**NORTH DALLAS BANK & TRUST CO.**
*Thinking like a customer.*

Page 1
Member FDIC
1249754

Waverly R Deans
B C Robertson
4320 Gilbert Ave
Dallas TX 75219-2961

We do home mortgage financing.
For more information, visit us at www.ndbt.com or call 972-716-7379

...975-4

**SUMMARY OF**

Account Number 12-497... Statement ...2/06 thru 11/30/06
Previous Balan... 3,... ...ays in t... period 60
Deposits ... ...rage L... 2,810.53
4 Checks/D... ...age C... 2,810.53
Service Charge ...st 2.79
Interest Paid ...e... ...ld Earned 0.65%
Ending Balance 2... ...06 Inte... 61.12

**WITHDRAWAL... ...HER DED...**

| DATE | DESC... |
|---|---|
| 10/13 | Tele... ...fer Fee |
| 10/13 | TELE... From 12... ...5 |
| 10/30 | Transfer... Acct No. |
| 11/29 | Transfer to ... Acct No. |

DAILY BALANCE HISTORY

| DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|
| 10/02 | 3,478.65 | 10/30 | 2,988.74 |
| 10/13 | 2,476.65 | 11/29 | 2,300.83 |

*Thinking like a customer.*

NORTH DALLAS BANK
& TRUST CO.

Page 2

1249754

**Regular Savings** **1249754 (Continued)**

BANK BITS
To Report a lost or stolen ATM/DEBIT CARD,
Contact our 24-HOUR Hotline @ 800-528-2273

# Exhibit "D"

citibank

Statement Period (M/D/Y) 01/10/07 - 02/09/07

DEANS WAVERLY RUTH
19A VILLAGE GARDEN
17 VILLAGE RD.
HAPPY VALLEY HONG KONG

ES00000036

*For enquiries, please call our 24-Hour CitiGold Wealth Management Phone Banking at (852) 2860 0111 or visit www.citigold .com.hk*

*Your e-Statement is now available at CitiGold Online!*

## Your Account Summary

### Checking Account

| Product Type | Account No. | CCY | Balance |
|---|---|---|---|
| Checking Account | 12774413 | HKD | 327.68 |
| Checking Account | 19971532 | USD | 16,274.86 |
| *Total* | | *HKD Equivalent* | *127,499.44* |

### Credit Card

| Product Type | Account No. | CCY | Credit Limit | Closing Balance |
|---|---|---|---|---|
| CITIBANK CATHAY PACIFIC VISA | 4028-5640-0045-7098 | HKD | 36,000.00 | 42,016.45 |
| *Total* | | | *HKD Equivalent* | *42,016.45* |

## Your Checking Account Details

### Checking Account 12774413 HKD

*Transaction Activities*

| Date | Description | Reference | Withdrawal | Deposit | Balance |
|---|---|---|---|---|---|
| 01/10/07 | Beginning Balance | | | | 327.68 |
| 02/09/07 | Closing Balance | | | | 327.68 |
| | *Total* | | *0.00* | *0.00* | |

### Checking Account 19971532 USD

*Transaction Activities*

| Date | Description | Reference | Withdrawal | Deposit | Balance |
|---|---|---|---|---|---|
| 01/10/07 | Beginning Balance | | | | 16,274.86 |
| 02/09/07 | Closing Balance | | | | 16,274.86 |
| | *Total* | | *0.00* | *0.00* | |

citibank

DEANS WAVERLY RUTH
Statement Period (M/D/Y) 01/10/07 - 02/09/07

## USEFUL TELEPHONE NUMBERS

| | |
|---|---|
| • 24-Hour CitiGold Wealth Management Phone Banking | : (852) 2860 0111 |
| • 24-Hour CitiPhone Banking / Citibank Visa Card / Citibank Mastercard / Diners Club Card Hotline | : (852) 2860 0333 |
| • CitiBusiness Hotline | : (852) 2860 0383 |
| • 24-Hour Citibank Ultima Card Hotline | : (852) 2860 0303 |
| • 24-Hour Citibank Ultima Card Hotline (CitiGold only) | : (852) 2860 0308 |
| • 24-Hour Citibank Platinum Card Hotline | : (852) 2860 0360 |
| • 24-Hour Citibank Platinum Card Hotline (CitiGold only) | : (852) 2860 0305 |
| • Citibank Investment Service Hotline | : (852) 2860 0222 |
| • Citibank Insurance Service Hotline | : (852) 2860 0222 |

## EXPLANATION

**Currency Manager Rollover Code**

P = Principal rollover, Interest transfer to other accounts (permanent)
I = Principal plus interest rollover (permanent)
A = Principal plus interest rollover (one time)
D = Principal plus interest transfer to other account
O = Principal rollover, Interest transfer to other account (one time)
(blank) = No instruction

**Currency Code**

036 = AUD 344 = HKD 756 = CHF 959 = GOLD
096 = BND 392 = JPY 764 = THB 978 = EUR
124 = CAD 458 = MYR 826 = GBP
156 = CNY 554 = NZD 840 = USD
208 = DKK 702 = SGD 752 = SEK

**Other Product**

CHPH : HKD Linked USD Call
CHPS : Call Deposit
CHPU : High-Yield USD Deposit
CRPS/ CRPD : Standby Credit
LRPL : Leveraged Fixed Deposit
LVLL : Leveraged Loan
MLPL : Market-Linked Deposit
OSP4 : Offshore Time Deposit
PDPL : Premium Deposit
RGPL/ FRPL : Time Deposit
IMAX : Interest Maximizer
HKXA : MaxiSavings Account
GOLD : Gold Manager
USXA : USD MaxiSavings account
USXB : USD MaxiSavings account (Pref)
HKXB : HKD MaxiSavings (3036)
HKXC : HKD MaxiSavings (3041)
HKXD : HKD MaxiSavings (3039)
HKXE : HKD MaxiSavings (3043)
HKTR : Transfer Account
SFCA : MaxiSavings - Checking
SFTD : MaxiSavings - TD
UFTD : Flexible Time Deposit

**Others**

Alt = Alternate
Amt = Amount
Avg = Average
CCY = Currency
CR = Credit Balance
DB = Debit Balance
Eqv = Equivalent
Freq = Frequency
FX = Foreign Exchange
Int = Interest
NAV = Net Asset Value
p.a. = per annum
Pre-term = Pre-terminate
Qty = Quantity
Txn = Transaction

## OUR SERVICE FEE AND DEFINITION

- For CitiGold Wealth Management customers, a monthly service fee of HK$300 will be debited from your account if the "Average Daily Combined Balance" is below HK$1,000,000 or equivalent for 3 consecutive months, whereas the monthly service fee for "International Personal Bank" customers is HK$500 or equivalent.
- For Citibanking customers, a monthly service fee of HK$200 will be debited from your account if the "Average Daily Combined Balance" is below HK$30,000 or equivalent, whereas the monthly service fee for "International Personal Bank" customers is HK$400 or equivalent.
- The "Average Daily Combined Balance" is calculated based on the sum of your daily deposit and investment balances of all your single name account(s) and joint name account(s), divided by the number of days in the month. If you only hold account(s) in joint names, the "Average Daily Combined Balance" is calculated based on the sum of the balances of all your account(s) held with the same joint names.
- The monthly service fee will be waived if customers are holding the following product(s):
  - Advanced Checking Account
  - Mortgage *
  - Personal Loan
  - Citibank Ready Credit / Citibank Ready Cash
  - FundSelect Savings Plan for the first 3 years
  - Insurance policy opened before May 1, 1997

* Not applicable to CitiGold Wealth Management customers

## OTHER NOTICES

**General**

- Citibank (Hong Kong) Limited ("Citibank (Hong Kong)"), its registered office address is 8/F., Dorset House, Taikoo Place, 979 King's Road, Hong Kong.
- Proceeds of your deposit will be released and paid upon maturity at the relevant branch, subsidiary or affiliate of Citibank, N.A. at the location of the deposit and its payment is governed by the laws in effect at the location of the deposit (including governmental acts, orders, decrees and regulations). Neither the head office nor any other branch, subsidiary or affiliate of Citibank, N.A. shall be responsible for payment of the deposit due to restrictions (including force majeure) beyond the control of the relevant branch, subsidiary or affiliate of Citibank, N.A. at the location of the deposit which prevents it from fulfilling its obligations to pay the deposit. In this context, "restrictions" shall not include restrictions on payment directly due to liquidation and insolvency. All obligations herein are payable solely at and by Citibank (Hong Kong), subject to the laws of Hong Kong (including any governmental actions, orders, decrees and regulations).
- If you think there is any error in the statement, please write to "The Auditor", P.O. Box 20161 Hennessy Road Post Office, Hong Kong. We must hear from you no later than 90 days after we send you the statement on which the error or problem occurs.
- If check(s) is/are accepted, the validity of the transaction(s) is/are subject to final clearance.
- If you change your mailing or email address or telephone number, kindly notify us in writing.
- HKD equivalent as shown on this statement is for indication purposes only.
- Indicative Market Price % and Value as shown on this statement are for indication purposes only and do not reflect the actual dealing price and value.
- The Bonds Brokerage Service, Mutual Fund Investment Services, Securities Services, Market-linked Notes, Premium Deposit, Market-linked Deposit, Foreign Currency Leveraged Investment and Foreign Exchange Margin Trading are not offered to United States citizen(s), resident(s), corporation, association, partnership or trust, etc. ("U.S. Person(s)"). If you become a U.S. Person, you must notify us in writing immediately, otherwise we will assume that your status remains unchanged.

**MaxiSavings - Checking**

- Your total available balance for MaxiSavings is the aggregate balance of your "MaxiSavings-Checking" and "MaxiSavings-TD". Negative balance shown in your "MaxiSavings - Checking" on the statement date does not represent an overdraft but it represents amount withdrawn exceeds the balances of "MaxiSavings - Checking" on the day prior to withdrawal.

**Insurance Plans**

- Your continuous cover is subject to the terms of the policy for which you should check with the insurance company directly. Insurance products are obligations only of the insurance company. Unless specified, they are not bank deposits or obligations of or guaranteed by Citibank (Hong Kong), Citibank, N.A., Citigroup Inc. or any of its affiliates or subsidiaries. For more information, please call our Citibank Insurance Service Hotline.

**Investment Services**

- Mutual Fund, Bond, Market-linked Note and Securities investments are not bank deposits, are not government insured, and involve risks, including the possible loss of the principal amount invested. Investors investing in Funds and Bonds, Market-linked Notes and Securities denominated in non-local currency should be aware of the risk of exchange rate fluctuations that may cause a loss of principal. Investors should refer to the relevant Fund, Bond and/or Market-linked Note offering documents for detailed information prior to purchase. Mutual Fund, Bond, Market-linked Note and Securities prices may go down as well as up. Citibank (Hong Kong) does not guarantee the existence of a secondary market for Bonds and Market-linked Notes. Market-linked Notes are obligations only of the issuer. Principal protection and/or interest guarantees provided by the issuer will not apply in the event that any note is redeemed before the maturity date and is subject to conditions. Investors should refer to the Offering Circular and/or the Term Sheet for details relating to the terms of the principal protection and/or interest guarantees. Unless specified, these investments are not obligations of or guaranteed by Citibank (Hong Kong), Citibank, N.A., Citigroup Inc. or any of their affiliates or subsidiaries.
- Foreign currency investments are subject to rate fluctuations which may provide both opportunities and risks. Investors may experience a loss when they convert foreign currency back to their home currency. For Premium Deposits, investors will be subject to the risk of fluctuation in the alternate currency and their original funds may be substantially reduced depending on the decline in the alternate currency. For Foreign Currency Leveraged Investment, investors may sustain losses in excess of their initial margin funds. Placing contingent orders, such as "stop loss" or "stop limit" orders, will not necessarily limit losses to the intended amounts. Market conditions may make it impossible to execute such orders. Investors may be called upon at short notice to deposit additional margin funds. If the required funds are not provided within the prescribed time, their position will be liquidated. Investors will remain liable for any resulting deficit in their account. The risk of loss for these investments can therefore be substantial. Investors should carefully consider whether these products are suitable in the light of their own financial position, investment objectives and risk profile.
- The price of Gold is volatile and investors should recognize that value of their investment may go down as well as up. Investments in Gold are subject to investment risks, including the possible loss of principal invested and are not insured by any governmental agency. Gold Manager does not represent a deposit of money and provides no yield nor interest.

Gold Manager is being setup under a Notional Gold Purchase Scheme under which Gold Manager only deals with Paper Gold and is not backed by physical gold and that the Bank has total discretion within such Scheme to determine its own gold hedging arrangements.

- For Market-linked Deposit, the amount of gain is limited to the predetermined interest even if the investor's view of the market movement of the underlying is correct. A market-linked deposit is not the same as nor should it be treated as a substitute for normal fixed time deposits. Investors investing in deposits denominated in non-local currency should be aware of the risk of exchange rate fluctuations that may cause a loss of principal. Past performance is not indicative of future results; prices can go up or down. In addition, partial withdrawal is not allowed. Pre-termination prior to maturity is also strongly discouraged. Any pretermination costs incurred will be deducted from the deposit and is subject to the approval by Citibank (Hong Kong).

HKN1E900/P000133/S000036/R000093259